IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:17-cv-02528-RM-NYW

ANTHONY WRIGHT,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
OFFICER JOSEPH R. STADLER, and
OFFICER JEREMY T. ARTHUR,

    Defendants.

---

# ORDER

---

This matter is before the Court on the recommendation of United States Magistrate Judge Nina Y. Wang (ECF No. 78) to grant Defendants' motion to dismiss (ECF No. 59). Plaintiff has filed an objection to the recommendation (ECF No. 80), and Defendants have filed a response to Plaintiff's objection (ECF No. 81). For the reasons given below, the Court overrules Plaintiff's objection, accepts in part and rejects in part the recommendation, and grants Defendant's motion to dismiss.

## I.    LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of a timely objection, the district may review a magistrate's report under

any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). However, conclusory allegations are insufficient. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). To determine whether a claim is plausible, a court considers "the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quotation omitted).

Finally, the Court is mindful that Plaintiff proceeds pro se; therefore, the Court reviews his pleadings liberally and holds them to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007).

## II. BACKGROUND

To avoid any confusion or dispute as to what the magistrate judge considered to establish the factual background herein, the Court establishes the relevant background de novo. Except as noted, the complaint alleges as follows. One cold and snowy evening, Officers Jeremy T. Arthur and Joseph R. Stadler of the Denver Police Department saw a Lexus in a driveway. (*Id.* at 5-6.)

The officers believed that the registered owner of the Lexus did not live at the residence where it was parked and that the driver had pulled into the driveway "to prevent [them] from contacting him." (*Id.* at 5.) From their patrol car, the officers saw Plaintiff, who is African American, "exiting the front door area of the residence." (*Id.* at 7.) Soon afterward, the homeowner arrived at the residence in another vehicle. (*Id.* at 5.) The officers saw Plaintiff speaking with the homeowner, then backing the Lexus out of the driveway to allow the homeowner to park there, and parking the Lexus across the street. (*Id.* at 7.) Plaintiff exited the Lexus and locked the doors. (*Id.*)

The officers initially contacted Plaintiff as he was crossing the street, blocking his way with their patrol car. (*Id.*) The patrol car was marked "gang unit," and the officers' actions and demeanor made Plaintiff feel unsafe. (*Id.* at 8.) Because the officers had seen a picture of the registered owner of the Lexus, they could tell that Plaintiff was not the registered owner. (*Id.* at 6.) The officers interrogated him before driving up the street, making a U-turn, and slowly driving back towards where they had contacted Plaintiff. (*Id.* at 8.) Meanwhile, Plaintiff began to walk to a nearby store, "decided to stop in the alley to throw some trash away," and then changed his mind about going to the store and headed back towards the homeowner's residence. (*Id.*)

The officers saw Plaintiff walking in the alley—which they considered to be suspicious given the weather—and decided to contact him again. (*Id.* at 6.) This time the officers exited the patrol car, grabbed Plaintiff, and escorted him to the front of the patrol car. (*Id.* at 9.) The officers made Plaintiff empty his pockets and asked him about the Lexus. (*Id.*) Plaintiff told the officers he did not have the key to the Lexus. (*Id.* at 9.) The officers then handcuffed Plaintiff, searched his inside pockets, and placed him in the back seat of the patrol car. (*Id.*) The officers

3

took turns interrogating Plaintiff and getting out of the car to look for the key to the Lexus. (*Id.*) Plaintiff complained that the handcuffs were too tight and were hurting his wrist. (*Id.*) The officers forcefully grabbed his hands while attempting to scan Plaintiff's finger with a fingerprint reader. (*Id.*)

Plaintiff asked the officers to call their supervisor, and she arrived about an hour later "with at least eight other officers from the gang unit division." (*Id.* at 9-10.) Plaintiff told the supervisor he had been arrested for no reason. (*Id.* at 10.) She asked him about the key to the Lexus and told him that if he did not submit to the fingerprint reader he would be taken to jail. (*Id.*) Two other officers began interrogating Plaintiff, and he was told he was under arrest for criminal impersonation. (*Id.*) He was later charged with criminal impersonation and possession of a controlled substance, though both charges were ultimately dropped. (*Id.* at 10.) Although the complaint does not mention this, Plaintiff concedes he was also charged with resisting arrest and that he pleaded guilty to that offense pursuant to a plea deal dropping the other charges. (ECF Nos. 65 at 8; 80 at 3.)

Plaintiff's second amended complaint (ECF No. 39) asserts thirteen claims for relief. The claims stem from the central assertion that the Officers Arthur and Stadler lacked probable cause and reasonable suspicion when they initially contacted him and when they subsequently arrested him. Some claims also stem the assertion that he was treated differently than two other individuals who were present—the homeowner, who is a "[H]ispanic male," and someone Plaintiff "believed to be a [C]aucasi[a]n male," who was asked by the officers if his car was being blocked by their patrol car. (ECF No. 39 at 14.)

Claims 1 and 3 are brought against Officer Arthur, in his official capacity and individually, under 42 U.S.C. § 1983, and are based on the theory that he conducted an

unreasonable search and seizure of Plaintiff. (*Id.* at 4, 10.) Claim 2 is brought against Officer Arthur under 42 U.S.C. § 1981 and is based on the theory that he violated Plaintiff's equal rights. Claim 4 is brought against Officer Arthur under § 1983 and is based on the theory that he racially profiled Plaintiff.

Claims 5 through 8 are parallel claims asserted against Officer Stadler.

Claims 9, 10, and 11 are brought against both officers under 42 U.S.C. § 1985 and are based on the officers' alleged conspiracies to violate his rights. Claim 13 is brought against the officers under 42 U.S.C. § 1986 and is based on their alleged failure to prevent those alleged conspiracies.

Claim 12 is brought against the City and County of Denver and is based on the theory that the municipality is liable for having a custom and policy of allowing its police officers to stop and detain African American males without probable cause or reasonable suspicion.

Defendants filed a motion to dismiss (ECF No. 59), which was referred to the magistrate judge. The magistrate judge determined that Claims 1-3, 5-7, 9, and 11 were barred by *Heck v. Humphrey*, 512 U.S. 477, 486-86 (1994), because a determination that the officers conducted an unreasonable search and seizure would imply the invalidity of his conviction for resisting arrest[1] and that conviction had not been reversed, vacated, or even challenged. (ECF No. 78 at 11.) The magistrate judge determined that Claims 4, 8, and 10 failed to state a claim because Plaintiff failed to allege facts demonstrating the officers' actions were motivated by discriminatory intent or caused a discriminatory effect. Rather, the allegations indicated "that the officers treated

---

[1] As noted by Judge Lewis T. Babcock in a previous order dismissing without prejudice Plaintiff's unreasonable search and seizure claims as stated in an earlier version of his complaint (ECF No. 6), "a plaintiff previously convicted for resisting arrest, which is defined as intentionally preventing a peace officer from effecting a lawful arrest, [is] barred from bringing a § 1983 claim for damages for violation of his Fourth Amendment right to be free from unreasonable seizures because such a claim necessarily implies that the arrest was not lawful." (ECF No. 7 at 4 (quotation omitted).)

5

different people who were doing different things differently." (*Id.* at 13.) The magistrate judge concluded that Claim 13 necessarily failed because Plaintiff did not sufficiently plead an underlying claim for racial profiling. The magistrate judge recommended dismissing Claim 12 because the complaint addresses conduct directed at Plaintiff only, and therefore he did not sufficiently allege a custom or policy that would support a claim for municipal liability.

### III. ANALYSIS

Plaintiff objects that the magistrate judge findings are clearly erroneous, but he does not identify any specific finding would have changed the outcome of his case. The Court has reviewed de novo Plaintiff's complaint and summarized the material allegations above. The Court rejects the magistrate judge's findings to the extent they differ from the above summary, but concludes that Plaintiff has not identified any erroneous factual finding from which the Court could conclude that dismissal is not appropriate.

Plaintiff objects to the magistrate judge's grouping of his claims for the purposes of her analysis. But Plaintiff has not explained how regrouping the claims, or even analyzing each claim independently, would have made a difference in the outcome here, and the Court discerns no error in the magistrate judge's approach to the these significantly overlapping claims.

Plaintiff objects that his conviction for resisting arrest is unrelated to his claims for unlawful search and seizure. However, the conviction clearly is tied to the events that form the basis for Plaintiff's claims, and the Court will not ignore it simply because he has chosen to omit

any mention of it from his complaint.[2]  Again, his guilty plea necessarily requires a lawful arrest, barring his unreasonable search and seizure claims under the *Heck* doctrine.

Plaintiff also objects that he should still be allowed to pursue his unreasonable search and seizure claims because dismissals under the *Heck* doctrine are without prejudice.  *See Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 560 n.5 (10th Cir. 1999).  But that is because a conviction may later be reversed, expunged, declared invalid, or called into question.  In the absence of any allegations or evidence that one of these has occurred, dismissal is appropriate here.

Plaintiff objects that he has shown discriminatory intent because the complaint alleges he is similarly situated to the homeowner and the Caucasian male.  However, the similarities he cites are superficial—it is irrelevant that all three men were "standing outside talking, walking or going somewhere" (ECF No 80 at 4).  It is relevant that Plaintiff did not appear to be in his own car or his own driveway and that he was walking through an alley in freezing temperatures.  The Court need not accept his conclusory allegation that he was similarly situated to two other individuals who happened to be present.  Thus, the complaint does allege facts showing he was similarly situated to individuals who were not interrogated or arrested on the evening in question.

Plaintiff objects that the officers were "looking for a Hispanic male" who was the registered owner of the Lexus, but decided to search and seize him instead.  But the allegations do not provide a factual basis for such an inference.  Rather, the allegations suggest that Plaintiff drew the officers' suspicion because he clearly was not the registered owner of the Lexus.

---

[2] It has already twice been explained to Plaintiff that the Court will not ignore his conviction.  (ECF No. 7 at 4; 78 at 11-12.)  Moreover, Plaintiff's complaint fails to comply with the Court's previous order to "clarify if there were any criminal charges filed against him as a result of the incident . . . and, if so, the current status of the criminal proceedings."  (ECF No. 5 at 4.)

Plaintiff objects that his arrest shows the Denver Police Department has an unconstitutional policy or custom of stopping and detaining African Americans. But the only African American mentioned in the complaint is Plaintiff. Allegations concerning him alone do not support the inference of a policy or custom.

Finally, because Plaintiff has failed to allege a violation of his rights, the allegation that the officers acted in concert fails to state a conspiracy claim as a matter of law.

Based on the foregoing, Plaintiff's objections are overruled. The Court further concludes that the magistrate judge's analysis was thorough and sound with respect to the determinations Plaintiff did not object to. Accordingly, the Court agrees with the recommendation to dismiss Plaintiff's claims.

**IV. CONCLUSION**

Therefore, the Court

(1) OVERRULES Plaintiff's objection (ECF No. 80);

(2) ACCEPTS IN PART (analysis) and REJECTS IN PART (background) the magistrate judge's recommendation (ECF No. 78);

(3) GRANTS Defendants' motion to dismiss (ECF No. 59); and

(4) ORDERS the Clerk to enter JUDGMENT in favor of Defendants and close this case.

DATED this 6th day of March, 2019.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge